

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

July 10, 2023

The Honorable Phillip M. Halpern
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

        Re:  <u>United States</u> v. <u>Francis Hughes</u>
             21 Cr. 584 (PMH)

Dear Judge Halpern:

        Sentencing in the above-referenced case is scheduled for July 18, 2023.  The
Government respectfully submits this letter to request that the Court impose a sentence of five
years' imprisonment to be followed by a 10-year term of supervised release. As discussed below,
the requested sentence is necessary to protect the public and appropriate given the seriousness of
the defendant's offense conduct.

## Factual Background

**A.  Offense Conduct**

        On or about April 29, 2020, the Honorable Judith C. McCarthy, United States Magistrate
Judge, Southern District of New York, authorized a search of a residence in Elmsford, New York
("Residence-1") for evidence of child pornography. On April 30, 2020, the FBI executed the search
of Residence-1.  Among the items recovered was a black Samsung Galaxy Note 9 with telephone
number ending in "3469."  Complaint ¶ 4; PSR ¶ 9

        The next day, May 1, 2020, the FBI interviewed a 15-year-old male minor ("Minor-1")
who lived in Residence-1.  Minor-1 turned 16 in June 2020.  Among other things, Minor-1 advised
the FBI that the Samsung Galaxy Note 9 was his phone and that, on numerous occasions beginning
in or about the summer of 2019, Minor-1 sent naked photos, including photos of his penis, to adult
males over social platforms.  PSR ¶ 10.

        Minor-1 advised that, while using the social media application Grinder ("Grindr"), Minor-
1 communicated with a male, later identified as Francis Hughes, on Grindr and then through text
messaging.  Hughes texted Minor-1 from a phone number ending in 8991 ("8991-Phone").  The
investigation revealed that the 8991-Phone was registered to Francis Hughes.  Hughes told Minor-
1 that he was a part-time college professor and a counselor.  Hughes sent Minor-1 a photo of his

penis and at least two photos of his face and body. Minor-1 sent at least one photo of Minor-1's penis to Hughes and the two discussed meeting to engage in sexual acts, including Minor-1 having his first "blow job. PSR ¶ 12.

The forensic analysis of Minor-1's phone revealed numerous text messages exchanged between Minor-1 and Hughes on February 16, 2020.  At approximately 5:37 p.m., on February 16, 2020, Minor-1 texted Hughes, "Hey."  Hughes replied, "Hi [name]."  Minor-1 said, "Hey." Hughes asked, "Sup?" Minor-1 responded, "Nothing much" and "You?" Hughes said, "Just getting some paperwork done."   At 6:19 p.m., Hughes asked, "Who you live with? Parents? Bros? Sisters?" Minor-1 responded, "Parents." Hughes asked, "No sibs?" Minor-1 responded, "Sister but she's moved out." Hughes said, "You like being the only son?" and "You're in charge, lol." Minor-1 replied, "Yeah lol."  Minor-1 asked, "What do you even work as." Hughes asked, "What hobbies you enjoy? Minor-1 responded, "Video games and stuff." Hughes said, "I'm still a part time college prof as well as a counselor Minor-1 responded, "Cool." Hughes asked, "Play any sports?" Minor-1 responded, "Soccer." Complaint ¶ 6(b); PSR ¶ 12.

At 6:24 p.m., Minor-1 asked, "Would you get mad if I sent a dick pic?" Hughes said, "Nice." Hughes said, "And how's school? You doing ok?" Minor-1 responded, "School is good." At 6:25 p.m., Hughes said, "Nk, I'd never get mad about that." At 6:25 p.m., Minor-1  transmitted a photo ("Photo-1").  Photo-1 is a photo of a male penis that appears to be semi-erect. Minor-1 said, "It's not hard in that pic."  Minor-1 then transmitted another photo ("Photo-2").  Photo-2 is another photo of a male penis. Minor-1  said, "Or in this one."   Hughes said, "That's fine. Looks nice" and "Mmmm I see you're uncut, huh?"  Minor-1  asked, "Oh yeah what did you mean by you wanting to treat me like your son/grandson" and "Yeah I am lol."  PSR ¶ 13.

At 6:26 p.m., Hughes said, "Mine's cut." Minor-1  asked, "Can I see?"  At 6:27 p.m., Hughes transmitted a photo ("Photo-3").  Photo-3 is a photo of an erect penis with a male's left hand holding the penis. Minor-1 said, "Nice."  Hughes asked, "Ever seen another guy's dick?" Minor-1  responded, "Yeah." The Hughes asked, "I mean in real life?" Minor-1 said, "Nah" and "Just pictures."  Hughes said, "I'm sure you've seen plenty of porn, lol."  Minor-1 responded, "I have."  Complaint ¶ 6(c).

At 6:29 p.m., Hughes asked, "And must jerk off a lot, huh?"  Minor-1 responded, "I jerk off so much ☺."  Hughes responded, "Lol. That's normal for a boy your age."  Hughes asked, "Cum a lot?"  Minor-1 replied, "I guess" and "It's a lot to clean up." Minor-1 asked, "What are you doing tonight?"  Hughes said, "Just have to make sure you clean up and not let your mom find it."  Minor-1 replied, "Yeah."  Hughes said, "Lol. Still finishing some work. Then I'll prolly watch some tv."  Minor-1 said, "I wanna jerk off with you through the grindr video call thing."  Hughes said, "Yeah? Well maybe later we can." Minor-1 said, "Don't fall asleep," and "Because we might have to do it late at night."  The Hughes said, "Oo. No problem."  PSR ¶ 14.

At 6:34 p.m., Minor-1  said, "I'm so horny right now." Hughes responded, "Lol. Good." Minor-1 asked, "Do you think you can come meet me tomorrow?" Hughes said, "How many times you jerk off a day?" Minor-1 responded, "Like 5 or 6."  The Hughes told Minor-1, "Can't tomorrow. Work."  Hughes said, "Wow, that's actually a lot" and asked, "You use lube or dry?" Minor-1 said, "Both."  Hughes said, "If you do it too much you could irritate the skin." Minor-1

said, "I dont do it that hard."  Hughes said, "But I get it.  Its one of the great things about being a boy. You get to relieve your horniness whenever you want." Complaint ¶ 6(f); PSR ¶ 15.

At 6:39 p.m. Hughes transmitted a photo ("Photo-4") to Minor-1.  Photo-4 is a photo of a Hughes, clothed, from the chest up.  Minor-1 responded, "I love you."  Hughes said, "Awwwww." At 6:40 p.m., Hughes transmitted another clothed photo of himself ("Photo-5") to Minor-1. Photo-5 appears to be a "selfie" – Hughes is facing a mirror holding a phone and appears to be taking the picture with the phone.  Minor-1 responded, "You're so sexy."  Hughes said, "I bet you are too." Minor-1 said, "I want you to spoil me."  Hughes said, "We can work on that." Minor-1  asked, "What do you mean?" Hughes said, "I mean when we meet we can try to make it a regular thing." Hughes asked, "How would you like to be spoiled by your grandpa?"  Minor-1 said, "Wait I think you're thinking of a different meaning of spoiling."  Hughes said, "Ok so tell how you mean it" and "Lol." Minor-1 said, "I mean like money wise."  Hughes said, "Ok." And "Maybe I could." Minor-1 said, "Awesome." PSR ¶ 16.

At 6:46 p.m., Hughes said, "That makes me your sugar daddy."  Minor-1 asked, "Are you fine with that?" Hughes said, "And you're the sugar baby, lol." Hughes said, "Well, depends on how much. I don't think I could actually support you." Minor-1 said, "Im not gonna ask for hundreds of dollars lol" and "Just like enough to get some games or something." Hughes said, "But I wouldn't mind giving you something now and then."  Hughes asked, "And what if your parents want to know how you get the games or something."  Minor-1 replied, "Don't worry I got a way to do it." Hughes asked, "Lol yeah? How?"  Hughes said, "Why not send me your face pic now babe."  Minor-1 replied, "I just have a different account where I can buy the games."  Minor-1 asked, "What's in it for me??" Hughes said, "Idk" and "Lol."  Minor-1  asked, "How about a little bit of sugar."  Hughes said, "Btw, to protect us, you should be sure to delete our chats when we are done."  Minor-1 said, "Yeah definitely." Hughes said, "Ok come get your sugar baby." Minor-1 asked, "How much sugar we talking about."  Hughes said, "What do you want?"  Minor-1 said, "To be honest idk." Hughes said, "It's ok. These are things we can talk about when we meet." Minor-1 asked, "Do you have like PayPal or something" and "Or like a credit card." Complaint ¶ 6(h);  PSR ¶ 17.

At 6:55 p.m., Hughes said, "For now my phone is dying.  I need to charge it."  Minor-1 said, "Oh ok."  Hughes said, "Let talk later." Minor-1 said, "OK baby" and "I love you so much." Hughes said, "But remember to delete. I will too."  Hughes said, "I'll make it worth your time. And love." Minor-1 said, "One last pic before you go" and transmitted another photo, this one a photo of a non-erect penis.  Hughes responded, "Yummmmm I will suck you so much" and "Make you cum." Hughes added, "Your first blowjob."  Minor-1 said, "I want to do it tomorrow." At 6:58 p.m., Hughes replied, "We'll see." PSR ¶ 19.

At 9:17 p.m., Minor-1  texted, "My grindr account got banned."  Hughes did not reply.  At 9:45 p.m., Minor-1 said, "Baby?"  At 10:06 p.m., Minor-1  texted, "Hellooooooo?" At 10:31 p.m., Minor-1  texted, "????"  Thereafter, Minor-1  texted Hughes repeatedly but Hughes did not reply. PSR ¶ 20.

On July 24, 2020, an FBI agent interviewed Minor-1. During that interview, Minor-1 advised the FBI agent that during his communications with Hughes on Grindr, he told Hughes

that he was 15-years-old. Minor-1 also confirmed that the photographs that he sent to Hughes on Grindr and through text messages were photographs that Minor-1 took of himself. PSR ¶ 22.

On or about May 6, 2020, Minor-1 was interviewed by a forensic interviewer. During the interview, among other things, Minor-1 was shown some of the text messages between Minor-1 and Hughes and he identified the messages as his text communications with Hughes.  PSR ¶ 21.

On July 29, 2020, the FBI executed a search warrant of Hughes' residence and seized a number of items, including a Samsung phone, which was on Hughes person.  Hughes identified the phone as his phone and advised that the phone number ended in "8991" and that he was the only person who used the phone and the only person with access to it.  Hughes was provided with the chats between Minor-1  and the 8991-Phone and he identified himself as the person sending the messages from the 8991-Phone. Hughes acknowledged receiving Photo-1, Photo-2 and Photo-6, the photos of Minor-1's penis. Hughes initially stated that he did not have a specific memory of the age of the person with whom he was texting. After being given an opportunity to read the messages, Hughes stated that he had believed that the "boy" with whom he was messaging was a minor.  Hughes also stated that he had engaged in at least one in-person sexual encounter with an individual he believed to be approximately 15-years-old and that the encounter had occurred at a high school Hughes identified. PSR ¶ 23.

## B.  The Federal Charges and the Guilty Plea

Information 21 Cr. 584 (PMH), filed on September 20, 2021, charged Hughes with one count of receipt and distribution of child pornography. On August 16, 2022, Hughes entered a guilty plea to the Information  without the benefit of a plea agreement.

Pursuant to the suggestion of the Court in *United States v. Pimentel*, 932 F. 2d 1029,1034 (2d Cir. 1991), the Government provided its then-position regarding the application of the United States Sentencing Guidelines. The Government advised the defendant that USSG §2G2.2 applied to Count One and that, pursuant to USSG § 2G2.2(a)(2), the base offense was 22. The Government included a five-level enhancement pursuant to USSG § 2G2.2(b)(5) for a pattern of activity involving the sexual abuse or exploitation of a minor.[1] The Government added two levels, pursuant to USSG §2 G2.2(b)(6), because the offense involved the use of a computer for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material.  The Government added two additional levels pursuant to §3B1.4 because the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense.  The Government recognized that, assuming the defendant clearly demonstrated acceptance of responsibility

---

[1]In January 2023, Government advised the Probation Office that the Government was no longer seeking a five-level enhancement for a pattern of activity involving the sexual abuse or exploitation of a minor. The Government's changed view was based on its meeting with a witness who had previously reported (following news of Hughes' arrest) that, when he was a teenager, Hughes engaged in inappropriate sexual conduct with him. After meeting with the individual, the Government concluded that the witness's encounters with Hughes did not necessarily fall within the Guidelines' definition of sexual abuse or exploitation of a minor.

through his allocution and subsequent conduct prior to the imposition of sentence, a three-level reduction would be warranted, pursuant to USSG § 3El.l(a) and (b).  In accordance with the foregoing calculations, the Government calculated that the applicable offense level is 28.

Thus, the Government's *Pimentel* letter provided that, based on a Criminal History Category of I, the defendant's sentencing range was 78 to 97 months' imprisonment, with a mandatory minimum sentence of 60 months' imprisonment.

## C.  The Defendant's Conduct While On Pretrial Supervision

Following his arrest, Hughes was released on bail and supervised in the Eastern District of New York.  U.S. Pretrial Services Officer Amanda Carlson monthly at his residence.

On May 5, 2022,  the Pretrial Services Officer conducted an unannounced home visit and discovered two Sandisk USBs in plain view. Hughes claimed, initially, that they belonged to his sister, but later admitted to Officer Carlson that they were his. He said that he had been using the USBs to look at pornography on his sister's tablet when she visited him. Hughes' sister advised Officer Carlson that she would leave an unlocked tablet in the defendant's presence but said she was unaware that he was using it. Officer Carlson conducted a cursory review of the USBs and discovered multiple photographs of what appears to be Hughes' erect penis and PDFs of email conversations between Hughes and an email belonging to "Nathan." Nathan appeared to be college-aged, and the conversations contained sexually explicit messages about the sexual acts they would like to engage in and when they could meet. Subsequently, on May 6, 2022, Hughes admitted to Officer Carlson that he had possessed a tablet in the residence.  When questioned on May 6, 2022 by the FBI, Hughes' sister provided the tablet to the FBI and admitted that it belonged to Hughes and that Hughes had just given her the tablet the day before on May 5, 2022 (after the Pretrial Officer discovered the USBs).

Based on the above, Pretrial Services filed a violation memorandum with the Court on May 6, 2020. The same day, an arrest warrant was issued for Hughes, and a bail hearing was held before the Honorable Paul E. Davidson.  Judge Davison ordered that the defendant be detained.

## D.  The Presentence Report

The Probation Office determined that Hughes' offense level was 23, which would have resulted in a Guidelines' sentence of 46 to 57 months, but for the statutory mandatory minimum of 60 months.  Accordingly, the PSR recognized that the Guidelines sentence was 60 months' imprisonment. The Government agrees with this Guidelines calculation.

The PSR recommends that the Court impose a sentence of 5 years' imprisonment.  In explaining the basis for this recommendation, the PSR recognizes the existence of substantial mitigating factors.  The PSR recognizes that the instant offense is Hughes' only criminal conviction; that he is in his sixties and has several chronic medical conditions; that he has expressed remorse and the intention of not engaging in similar conduct again; that he voluntarily engaged in mental health treatment while on pretrial release; and that he served as a leader in his religious community for several decades.  The PSR also recognizes that significant aspects of the

defendant's conduct warrant a substantial custodial sentence. The PSR underscores, "The seriousness of the offense, the need for punishment, specific and general deterrence, the promotion of respect for the law, and the protection of the community are paramount in sex offense cases." Further, the PSR emphasizes that the defendant's "actions were predatory in nature, and Hughes admitted that he previously engaged in at least one in-person sexual encounter with an individual he believed to be approximately 15 years old." The PSR adds, "Furthermore, it is concerning that the defendant knowingly used an unmonitored device to engage in sexual conversations and exchange sexual images while on pretrial supervision."

## ARGUMENT

### The Defendant Is Not Entitled To A 2-Level Deduction Pursuant to U.S.S.G. 2G2.2(b)(1)

Hughes' contention that he is entitled to a 2-level reduction pursuant to U.S.S.G. § 2G2.2(b)(1) requires rejection. Hughes does not qualify for a reduction under § 2G2.2(b)(1) because his conduct was not "limited to the receipt or solicitation of material involving the sexual exploitation of a minor." In addition to receiving images of child pornography, Hughes engaged in sexually explicit online communications with a 15-year-old boy and discussed meeting with that boy to engage in sexual activity with him. Further, Hughes transmitted sexually explicit images of himself to the boy (a separate violation of federal law – 18 U.S.C. § 1470).

Thus, although Hughes satisfies one of the prerequisites for a reduction pursuant to § 2G2.2(b)(1) -- because he did not intend to traffic and distribute such material -- he does *not* satisfy the other requirement – that his conduct was "limited to the receipt or solicitation of material involving the sexual exploitation of a minor." Accordingly, he does not qualify for the reduction. The Commentary does not suggest otherwise but rather makes clear that the reduction is aimed at "simple receipt" cases – that is, cases that are, essentially, "simple possession" cases. This case is not such a case. *See, e.g., U.S. v. Goluba,* 672 F.3d. 304 (5th Cir. 2012) (defendant did not qualify for a reduction pursuant to § 2G2.2(b)(1) where defendant's conduct included sending "a sexual photograph of himself" to a child, seeking to "entice minors to engage in sexually explicit conversations and sexual acts," and discussing "his interest in sexually exploiting children with others"); *U.S. v. Hodge,* 805 F.3d. 675 (6th Cir. 2015) (rejecting reduction pursuant to § 2G2.2(b)(1) where defendant's conduct included "secretly recording videos of his fifteen-year-old stepdaughter naked").

### A Sentence of Five Years' Imprisonment Is Appropriate

The Government agrees with the Probation Office and the defense that a sentence of five years' imprisonment is appropriate here. The Government submits that a sentence of five years, to be followed by a 10-year term of supervised release, is the lowest sentence that would be sufficient, but not greater than necessary, to comply with the 3553(a) factors. The requested sentence is necessary to protect the public and is appropriate given the seriousness of the defendant's offense conduct.

Although the Sentencing Guidelines no longer play a mandatory role at sentencing, they continue to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005). In furtherance of that goal, judges are required to "consider the Guidelines `sentencing range established for... the applicable category of offense committed by the applicable category of defendant,' § 3553(a)(4), the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims, §§ 3553(a)(1), (3), (5)-(7) (main ed. and Supp. 2004)." 543 U.S. at 259-60.

In sentencing defendants, district courts must consider not only the Guidelines but also the other factors set forth in Section 3553(a). Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations that district courts must take into account at sentencing: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [in the Sentencing Guidelines]; (5) any pertinent policy statement [issued by the Sentencing Commission]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A.      The Requested Sentence Will Reflect the Seriousness of the Offense Conduct and Provide Just Punishment**

Here, a sentence of five years' imprisonment, the statutory mandatory minimum sentence, cannot be considered "greater than necessary" to achieve the goals of sentencing. The defendant engaged in sexually explicit online communications with a 15-year-old boy. He received sexually explicit images of the boy and he transmitted sexually explicit images of himself to the boy. In addition, he discussed meeting in person with the boy to engage in sexual activity. Among other things, Hughes told the 15-year-old, "I mean when we meet we can try to make it a regular thing" and indicated that he looked forward to giving the boy his "first blow job."

**B.      A 5-Year Sentence Will Protect The Public**

The defendant's offense conduct – as well as his admission that he engaged in at least one in-person sexual encounter with an individual he believed to be 15-years-old – underscores his inability to control his sexual appetite for children. Hughes communications reveal his keen awareness of the risk he faced of being caught: Hughes repeatedly reminded the boy to delete

their communications and, when the boy texted Hughes to tell him that his Grindr account had been banned, Hughes stopped communicating with him altogether. [2]  The fact that Hughes engaged in the offense conduct despite his clear awareness of the risk he faced of being caught highlights his inability to control himself.  Additionally, the fact that Hughes engaged in the offense conduct notwithstanding his role in the community as a pastor and spiritual leader speaks volumes concerning the extent of his sexual addiction.  Even with so much to lose, Hughes could not stop himself from engaging in the instant criminal conduct. And, although the defendant has expressed remorse and a desire "to develop a plan for self-improvement," (Def. Exh. H) and appears amenable to the prospect of treatment, neither his remorse nor his desire for self-improvement and treatment mitigate the danger that he poses to the community.  Indeed, no one can predict, with any degree of confidence, that he will adhere to a treatment program or that, after treatment, he will not pose a danger.

## C.      The Requested Sentence Will Provide Adequate Deterrence and Promote Respect for the Rule of Law

In addition to protecting the public and providing a just punishment, the requested sentence of five years' imprisonment to be followed by a 10-year period of supervision would send an important message of deterrence to Hughes, underscoring that this serious offense conduct will be met with serious consequences. [3]  Further, the requested sentence would also send an important message of deterrence to all others who prey, as Hughes did, on the most defenseless and vulnerable members of our community – our children.

---

[2] The defense submission maintains that "Mr. Hughes's refusal to plan a meetup suggests that he was not trying to actual[ly] meetup with the child." The Government submits that a more accurate reading of the events is that Hughes stopped communicating with the minor because the minor told him that his Grindr account had been banned.

[3] The fact that Hughes was unable to comply with his bail conditions while on pretrial release demonstrates the need for a lengthy period of supervision here.

## Conclusion

For all the foregoing reasons, the Government requests that this Court impose a sentence of five years' imprisonment to be followed by a 10-year term of supervised release.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by:  Marcia S. Cohen
Assistant United States Attorney
(914) 993-1902

cc: Ben Gold, Esq.
    Ashley Geiser, USPO